ALLEN, J.
The appellant, G.H. Skipper, Inc. (Skipper), challenges a summary final judgment in favor of the appellee, the City of Pensacola, doing business as Energy Services of Pensacola (the City), in Skipper’s action alleging breach of contract. Because we conclude that the provision of the parties’ contract upon which the trial court’s ruling was based does not clearly and unambiguously entitle the City to judgment in its favor, we reverse the order under review.
Skipper contracted with the City to construct and install natural gas pipelines and service lines as required by the City over a three-year period. The contract provided that Skipper would be entitled to payment at specified unit rates based on the quantity and nature of the materials, equipment, and labor actually provided. Skipper filed a complaint alleging that the City had breached the contract by performing itself a substantial portion of the work referenced in the contract. Skipper alleged that this constituted a breach because the contract contemplated that, except in limited circumstances not material to Skipper’s theory of recovery, Skipper would perform all natural gas pipeline and service line construction and installation required by the City during the term of the contract. The trial court ultimately entered summary final judgment for the City based upon a determination that section 2.14 of the contract afforded the City an unlimited right to use any firm or entity it desired for performance of the work referenced in the contract, and that this right included the right of the City to perform the work itself.
Section 2.14 provides:
Use of other Contractors: The Contractor agrees to allow the City to retain the services of another firm or entity other than the Contractor to perform the *868 scope of services as identified in this specification.
This provision is internally ambiguous because it references the “services identified in this specification” but fails to identify any services as being within the specification. Comparison of the sections appearing in the contract with those referenced in the contract’s table of contents, and comparison of the language used in sections 2.14 and 2.15, might lead one to surmise that the services referenced in section 2.14 were limited to “placement of pipes in joint trenches,” as discussed in section 2.15. But a plain reading of the contract does not necessarily lead to this conclusion. Indeed, a plain reading of the contract provides no clear indication as to what meaning the parties intended to convey by their reference to “services as identified in this specification.”
Even setting aside this internal ambiguity and assuming that “services as identified in this specification” includes all contract work, section 2.14 still does not give the City a clear right to perform the contract work itself. Section 2.14 involves the City’s “Use of other Contractors.” Apart from the fact that the provision makes no reference to the City performing the work itself, expansion of the term “other Contractors” to include the City is difficult to reconcile with other provisions of the contract specifying particular circumstances under which the City would be permitted to self-perform contract work (upon Skipper’s default or failure to make necessary repairs to defective materials or work). If the parties had intended to give the City an unlimited right to self-perform the contract work, it seems that there would have been no reason to include provisions regarding specific circumstances in which this overriding and unlimited right could be exercised.
Further, construing the term “other Contractors” to include the City would appear to conflict with the objective of section 1.09 of the contract. That section authorizes the City to engage third parties to perform portions of the contract work when the City believes that improved efficiencies could thereby be achieved. But it specifically provides that any third party so engaged will be required to perform its work under the same terms and conditions specified in the City’s contract with Skipper. Some portions of the work Skipper was to perform were likely more profitable than other portions of the work. If the City were permitted to selectively contract with others to perform the potentially more-profitable portions of the work, but at unit rates below Skipper’s unit rates under the contract, the City could thereby reduce its overall costs for the contract work. The parties apparently intended by their inclusion of section 1.09 to foreclose this possibility and to eliminate any financial incentive the City might have to allow parties other than Skipper to perform portions of the contract work. Construing section 2.14 as allowing the City an unlimited right to self-perform the contract would give the City the very incentive the parties apparently intended to take away by including section 1.09 in the contract. Under such a construction, the City would be free to itself perform any portions of the contract work that it could perform at less cost than would be due Skipper under the parties’ contract.
Because section 2.14 of the parties’ contract is internally ambiguous and does not give the City a clear and unlimited right to perform the contract work itself, the summary final judgment is reversed and this case is remanded.
BOOTH and-BARFIELD, JJ., concur.